IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY W. FALK,                                    Case No. 3:14-cv-01915-AA
                                                    OPINION AND ORDER
                  Plaintiff,

          v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                  Defendant.
_____

Richard F. McGinty
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, Oregon 97301
          Attorney for plaintiff

Billy J. Williams
Janice E. Hébert
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Nicole Jabaily
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075
          Attorneys for defendant

PAGE 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Timothy W. Falk brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title II disability insurance benefits under the Act. For the reasons explained below, the Administrative Law Judge's ("ALJ") decision is affirmed and this case is dismissed.

## BACKGROUND

Born February 3, 1970, plaintiff was 36 years old on the alleged disability onset date of August 22, 2006. Tr. 40. Plaintiff completed high school and received an associate's degree in automotive diesel technology. Tr. 43. His previous jobs include heavy equipment mechanic, head assembler and lead man of a carnival ride manufacturer, seasonal farm worker, automobile mechanic, logger, and equipment repair technician. Tr. 45, 224. Plaintiff alleges he suffers from chronic migraine headaches, memory issues, impaired attention and concentration, increased irritability, and sensitivity to light and sound. Tr. 45. Plaintiff alleges these symptoms began after he was hospitalized for meningitis in 1996, and his worsening symptoms led to his resignation as a heavy equipment mechanic in 2006. Tr. 46.

On December 31, 2010, plaintiff filed an application for disability insurance benefits, alleging disability beginning August 22, 2006. Tr. 15. His claim was denied initially and on reconsideration, after which plaintiff filed a written request for a hearing. Tr. 15. Plaintiff was represented by counsel and testified at a hearing on April 3, 2013. Tr. 15. The ALJ found plaintiff not disabled. Tr. 29. The Appeals Council denied plaintiff's request for review, rendering the ALJ's findings the final agency decision. Tr. 1. Plaintiff subsequently filed this appeal.

PAGE 2 - OPINION AND ORDER

## STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations marks omitted). The court must weigh "both the evidence that supports and detracts from the [ALJ's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"The [Commissioner] has established a five-step sequential process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the ALJ determines whether a plaintiff is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(c). If so, the plaintiff is not disabled.

At step two, the ALJ evaluates whether the plaintiff has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, he is not disabled.

At step three, the ALJ determines whether the plaintiff's impairments, either singly or in

combination, meet or equal "one of a number of listed impairments that the [ALJ] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d) (list of impairments in Appendix 1). If so, the plaintiff is presumptively disabled; if not, the ALJ proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the ALJ resolves whether the plaintiff can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the plaintiff can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141-42. At step five, the ALJ must establish the plaintiff can perform other work existing in significant numbers in the national and local economy. *Id.*; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the plaintiff is not disabled. 20 C.F.R. § 404.1566.

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

At step one, the ALJ concluded the plaintiff had not engaged in substantial gainful activity since August 22, 2006, through his last insured date of December 31, 2011. Tr. 17. At step two, the ALJ found the plaintiff has several severe impairments: headaches, an affective disorder, and an organic mental disorder. Tr. 17. At step three, the ALJ found plaintiff's combination of symptoms, while severe, did not meet or equal the severity of impairments listed in Appendix 1. Tr. 18. At step four, the ALJ found plaintiff was not able to perform his past relevant work. Tr. 28. Finally, the ALJ concluded plaintiff had the residual functional capacity ("RFC") to perform other work existing in significant numbers in the national economy. Tr. 29-30.

## DISCUSSION

Plaintiff asserts the ALJ erred by (1) improperly evaluating plaintiff's credibility; (2) failing to include all of plaintiff's functional limitations in the RFC; (3) improperly evaluating medical

PAGE 4 - OPINION AND ORDER

evidence; and (4) failing to reconcile the Vocational Expert's ("VE") testimony with the Dictionary of Occupational Titles ("DOT").

I.    *Plaintiff's Credibility*

Plaintiff argues the ALJ did not support her adverse credibility finding with clear and convincing reasons. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If plaintiff produces medical evidence and there is no evidence of malingering, an ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that plaintiff was not wholly credible. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Plaintiff alleges he has severe memory issues and chronic headaches. Tr. 45. He gets confused easily, Tr. 45, and occasionally gets lost in his neighborhood, Tr. 249. On days he has severe headaches, he is unable to drive, mow the lawn, or prepare his own meals. Tr. 45. He noted that these activities take longer and cause considerably more fatigue than before his alleged disability. Tr. 248. He alleges he does minimal housework and will mow the lawn on a riding mower for a maximum of four hours per week. Tr. 249.

The ALJ found plaintiff "only partially credible" and "accord[ed] his reports and statement only some weight." Tr. 27. First, the ALJ pointed to evidence of malingering. The ALJ noted two examining physicians, Dr. Smurthwaite and Dr. Kruger, concluded plaintiff might be exaggerating his symptoms. Tr. 27. Dr. Smurthwaite noted several inconsistencies "suggesting either distractibility or variable motivation." Tr. 27, 304. After Dr. Kruger screened plaintiff for signs of malingering, he noted "the reader is to be cautious in interpreting [plaintiff's] complaints and concerns." Tr. 27,

372. Affirmative evidence of malingering supports an adverse credibility finding.[1] *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ also provided other clear and convincing reasons to discredit plaintiff's symptom testimony. The ALJ concluded plaintiff's failure to seek medical treatment for his headaches after 2007 suggested plaintiff's "headaches and cognitive symptoms were not as severe as he testified at the hearing." Tr. 28. The ALJ also found plaintiff's activity level, including working on a farm three days a week, was inconsistent with his symptom testimony. Tr. 28. Finally, the ALJ noted plaintiff's statement that he "disliked his job," Tr. 28, 283, his former wife's statement that he "did not seem worried about working," Tr. 28, 302, and evidence he was being supported financially by family and friends, Tr. 28, 42, 319, evidenced that plaintiff was not motivated to work. Tr. 28. These factors are permissible bases for discrediting plaintiff's testimony. *See Smolen*, 80 F.3d at 1284 ("To determine whether [plaintiff's] testimony regarding the severity of [his] symptoms is credible, the ALJ may consider . . . unexplained or inadequately explained failure to seek treatment . . . [and plaintiff's] daily activities."); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir.1992) (holding the ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony).

---

[1]Plaintiff argues the ALJ erred in relying on this evidence of malingering because Dr. Schiff, another examining physician, noted "[t]he patient appeared to try his best, and this was confirmed by a brief test to assess malingering." Tr. 319. Even assuming the opinions of different doctors reaching different conclusions about symptom exaggeration at different times constituted an ambiguity the ALJ was required to resolve, any error is harmless because the ALJ provided other clear and convincing reasons to support the adverse credibility finding. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (so long as there remains "substantial evidence supporting an ALJ's conclusion on . . . credibility" and the error does not "negate the validity of the ALJ's ultimate [credibility] conclusion," the error is defined harmless and does not warrant reversal).

Plaintiff asserts the reasons set forth above are not clear and convincing because Dr. Smurthwaite, an examining psychologist, suggested plaintiff may suffer from somatoform disorder.[2] Even assuming plaintiff has somatoform disorder, that would not explain the conflict between alleged symptom severity and the activities of daily living or the evidence suggesting plaintiff stopped working for reasons unrelated to his impairments. *See Colter v. Colvin*, 554 Fed. Appx. 594, 596 (9th Cir. 2014) (affirming ALJ's adverse credibility determination notwithstanding plaintiff's alleged somatoform disorder because the credibility determination was supported with substantial evidence). Thus, the ALJ's credibility finding is affirmed.

II.    *Residual Functional Capacity*

Plaintiff further contends the ALJ did not account for all of his limitations in fashioning the RFC.[3] Specifically, plaintiff argues the ALJ failed to include certain limitations supported by medical evidence in the RFC.

A.    *Processing Speed, Attention, and Memory Limitations*

Plaintiff argues the ALJ failed to include functional limitations stemming from cognitive disorder in the RFC, including issues with processing speed, attention, and memory. A number of medical sources identified such limitations. For example, tests administered by Dr. Schiff indicated

---

[2]Somatoform disorders involve "the presence of physical symptoms that suggest a general medical condition . . . and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 485 (4th ed. text rev. 2000).

[3]Plaintiff also argues the ALJ's hypothetical question to the VE was improper because it did not contain all of plaintiff's limitations. Because the question included all limitations in the RFC formulated by the ALJ, this amounts to a challenge to the sufficiency of the RFC. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (The hypothetical an ALJ poses to a VE, which derives from the RFC, "must set out all the limitations and restrictions of the particular [plaintiff].") (emphasis omitted).

slow processing speed, deficits in attention, and problems with short-term memory. Tr. 320. Dr. Smurthwaite and Dr. LeBray assessed similar limitations. There is no error, however, because the ALJ adequately incorporated plaintiff's processing speed limitation by limiting plaintiff to "simple, routine, hands-on type tasks, done at a regular production pace but not a fast-paced production pace." Tr. 19. The ALJ also incorporated plaintiff's attention and memory limitations by restricting plaintiff to "simple instructions, but might have needed these repeated in the first few weeks of employment [and] to make simple, work-related decisions in a work environment involving only routine changes." Tr. 19. An ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (holding there was no conflict to resolve when an ALJ incorporated limitations "entirely consistent" with doctors' assessed limitation into an RFC); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Thus, the ALJ properly incorporated limitations of cognitive disorder, including processing speed, attention, and memory issues, to the RFC.[4]

      B.    *Other Limitations*

---

[4]The Court agrees with plaintiff that the ALJ erred at step two by excluding cognitive disorder as a severe impairment. However, the error was harmless because the ALJ resolved step two in plaintiff's favor, Tr. 17, and the RFC included all limitations stemming from cognitive disorder supported by the record, Tr. 19. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding the ALJ's failure to include an impairment that is severe is harmless when an ALJ resolves step two in the plaintiff's favor and properly considers limitations imposed by the impairment at other steps of the sequential process).

PAGE 8 - OPINION AND ORDER

Plaintiff next argues the ALJ failed to include plaintiff's speech limitations in the RFC. Dr. Smurthwaite observed plaintiff's speech had a "mildly halting quality . . . [the] quality was inconsistent, with periods of relatively normal speech interspersed with periods of mildly halting speech." Tr. 302. In Dr. Smurthwaite's summary, he concluded "[a]lthough the patient [was] reporting speech difficulties, no problems were found for naming or simple verbal fluency." Tr. 304.

The ALJ concluded "[n]o speech problems were found." Tr. 22. Dr. Smurthwaite's assessment can reasonably be interpreted as concluding plaintiff had no speech limitations. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. Accordingly, the ALJ did not err by excluding speech issues from the RFC.

Finally, plaintiff argues the ALJ erred by excluding Dr. LeBray's recommendation that plaintiff would need part-time, flexible, sedentary work. However, Dr. LeBray notes that it is "to be determined" whether plaintiff may need part-time, flexible, sedentary level of work. Tr. 356. There is no error when an ALJ omits a limitation in a doctor's opinion that is not expressed as a functional limitation. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009).

III.    *Weighing Medical Evidence*

Plaintiff asserts the ALJ improperly weighed the medical evidence from examining physicians, Dr. Freed, Dr. Kruger, and Dr. LeBray, and non-examining physicians, Dr. Kennemer and Dr. Lundblad. There are three types of medical opinions in social security cases: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).

"When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). To reject the uncontested opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (*citing Lester*, 81 F.3d at 830–31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected for specific and legitimate reasons. *Lester*, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. However, the opinions of a non-examining physician may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

A.      *David Freed, Ph.D.*

Plaintiff first argues the ALJ improperly discredited Dr. Freed, an examining physician, by giving his opinion "little weight." The ALJ gave Dr. Freed's opinion "little weight" because "it [was] highly inconsistent with the other evidence of the record, and it [was] also internally inconsistent." Tr. 26. Dr. Freed diagnosed plaintiff with mental disorder due to seizures and mood disorder due to seizures. Tr. 26. No other physician so much as mentioned seizures in their opinions.

As a psychologist, Dr. Freed does not have the expertise to diagnose seizures. The regulations require the ALJ generally to give more weight to the opinion of a specialist about medical issues

related to his area of specialty. *See* 20 C.F.R. § 404.1527(c)(5). The ALJ permissibly discounted Dr. Freed's diagnosis of a seizure disorder because "[t]he record shows the [plaintiff] has been evaluated by medical doctors and doctors of osteopathy, some specialized in neurology, none of whom have ever assessed a seizure disorder." Tr. 27.

In addition, the ALJ explained Dr. Freed's opinion was internally inconsistent because he diagnosed plaintiff with mental disorder due to seizures and mood disorder due to seizures, then "later explains that there is a 'possibility' of a seizure disorder." Tr. 26. Internal inconsistency is a legitimate reason to give less weight to a medical source. *Cf. Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding rejection of internally inconsistent medical opinion of a treating physician). Accordingly, the ALJ properly provided clear and convincing reasons supported by substantial evidence to give Dr. Freed's opinions "little weight."

B.    *Robert Kruger, Psy. D.*

Plaintiff next contends the ALJ erred by giving the opinion of Dr. Kruger, an examining physician, "great weight." The ALJ gave Dr. Kruger's opinion great weight because his opinion was "consistent with his examination results and test results, and also consistent with the exam results of Dr. Smurthwaite." Tr. 25. Plaintiff contends Dr. Kruger's opinion should not be accorded "great weight" because his findings contradict the other examining doctors' findings regarding cognitive disorder. However, Dr. Kruger does not exclude a cognitive disorder diagnosis, and in fact he included a reported history of cognitive disorder in his diagnostic impressions. Tr. 373. Thus, Dr. Kruger's opinion is not inconsistent with opinions indicating plaintiff has cognitive disorder.

Plaintiff also argues Dr. Kruger rejected any medical limitations due to plaintiff's meningitis. Dr. Kruger noted plaintiff "was diagnosed with meningitis . . . [h]owever, this examiner was not

PAGE 11 - OPINION AND ORDER

privy to any medical reports related to his medical care/hospitalization at that time." Tr. 372-73. The Court understands Dr. Kruger's statement as a notation about the reports he received for review, not a rejection of any of plaintiff's limitations.

C.    *Peter LeBray, Ph. D.*

Plaintiff asserts the ALJ erred when she rejected examining physician Dr. LeBray's opinion plaintiff would have to undergo "work hardening."[5] The ALJ found this work hardening statement "inconsistent with the plaintiff's admission in 2007 he was working on a hay farm three days a week in 2007." Tr. 25. This is a sufficient justification to reject Dr. LeBray's opinion about work hardening.

D.    *Non-Examining Medical Providers*

Finally, plaintiff contends the ALJ improperly gave too much weight to non-examining physicians Kordell Kennemer, Psy. D., and Sandra Lundblad, Psy. D. The ALJ explained she gave "significant weight to the opinions of doctors Kennemer and Lundblad, because they are consistent with the examination results of Dr. LeBray and Dr. Smurthwaite." Tr. 26. Although the plaintiff generally asserts that the opinions of Dr. Kennemer and Lundblad's opinions are inconsistent with the opinions of Dr. Smurthwaite, Dr. Dieter, Dr. Schiff, and Dr. Freed, Plaintiff does not specify any inconsistencies and none are apparent to the Court.

The Court rejects plaintiff's contention that Dr. Lundblad's opinion is inadequate because it is merely a "check-the-box" response and "rubber stamp" on Dr. Kennemer's opinion. Dr. Kennemer completed the initial disability report, then Dr. Lundblad completed a reconsideration

---

[5]Dr. LeBray opined that plaintiff "will do well with 2 hours/day at a suitable task, then perhaps 4 and so on." Tr. 357. The Court thus understands "work hardening" to mean plaintiff would need to gradually work up to full eight-hour days.

PAGE 12 - OPINION AND ORDER

disability report. When she incorporated substantial portions of Dr. Kennemer's initial report, Dr. Lundblad followed the model used by the agency in issuing a recommendation on reconsideration. This is not the type of "check-the-box" or "rubber stamp" review disfavored by courts. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject a "check-off report" if it does not "contain any explanation of the bases of the[] conclusions"). Accordingly, the ALJ did not err by giving significant weight to the non-examining physicians because their opinions were consistent with medical evidence in the record.

IV.     *Vocational Expert's Testimony and the DOT*

Finally, plaintiff argues the ALJ failed to resolve conflicts between the DOT and the VE's testimony plaintiff could work as a car lot attendant (DOT 915.687-022), laundry sorter (DOT 631.687-104), and office cleaner (DOT 323.687-014). Plaintiff asserts the DOT descriptions for these jobs are "inconsistent" with the VE's testimony because the descriptions do not address certain specific limitations from plaintiff's RFC, such as: no bright lights, repetition of instructions in first few weeks of employment, regular pace versus fast pace production, and no over the shoulder supervision. Although it is true the DOT descriptions do not address these limitations, the Court finds no conflict. The ALJ listed all of these limitations in her hypothetical question to the VE and the VE testified that a person with such limitations could perform the identified jobs. Part of the VE's role at a disability hearing is to fill in any gaps in the DOT descriptions to ensure an individual with a given RFC can perform the duties associated with a given job. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir.1982) (essential role of a vocational expert is to "translate[] factual scenarios into realistic job market probabilities"). Moreover, plaintiff has not explained why the limitations regarding bright lights, repetition of instruction, regular pace, or over-the-should supervision would

PAGE 13 - OPINION AND ORDER

prevent him from working as a car lot attendant,[6] laundry sorter, or office cleaner. Accordingly, the

ALJ properly relied on the VE's testimony to conclude plaintiff could perform those jobs.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this *13th* day of March 2016.

_____

Ann Aiken
United States District Judge

_____

[6]Plaintiff does not argue the RFC limitation of "less than the full range of light work" conflicts with the VE's recommendation that plaintiff could work as a car lot attendant. However, the Court notes a car lot attendant requires "medium work," which is in direct conflict with the RFC. This is harmless error because the VE properly identified two other occupations, laundry sorter and office cleaner, which provide, in total, 7,500 jobs in the local economy and 756,8000 jobs in the national economy. Tr. 29-30, 60. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error is harmless where it is inconsequential to the disability determination.).

PAGE 14 - OPINION AND ORDER